fIN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL SHERMAN ALLEN,** | : | |
| Plaintiff | : | No. 1:23-cv-01404 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| **MR. ABEL, et al.,** | : | |
| Defendants | : | |

**MEMORANDUM**

Plaintiff Michael Sherman Allen ("Plaintiff"), a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"), is currently incarcerated at State Correctional Institution Dallas ("SCI Dallas") in Dallas, Pennsylvania. (Doc. No. 1.) He has commenced the above-captioned action by filing a pro se complaint pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983"), asserting violations of his constitutional rights while incarcerated there. (Id.) In accordance with the Prison Litigation Reform Act,[1] the Court has conducted an initial review of Plaintiff's complaint. For the reasons set forth below, the Court will dismiss Plaintiff's complaint but without prejudice to him filing an amended complaint.

**I.   BACKGROUND**

On August 23, 2023, Plaintiff filed his Section 1983 complaint against Wellpath, a healthcare provider for the DOC, and the following individuals, all of whom appear to have worked at SCI Dallas during the period of time relevant to his claims: Kevin Ransom, the superintendent; N. Hogan, a grievance coordinator; Mr. Abel, a physician's assistant; and Ms. Mareinkowski, a healthcare administrator. (Id. at 1, 2–3.) Following the issuance of a Thirty

---

[1] See The Prison Litigation Reform Act of 1995, Pub. L. No. 104–134, 110 Stat. 1321 (Apr. 26, 1996).

(30)-Day Administrative Order (Doc. No. 3), Plaintiff filed a motion for leave to proceed in forma pauperis (Doc. No. 4), as well as his prisoner trust fund account statement (Doc. No. 5). The Court, having reviewed Plaintiff's motion and account statement, will grant him leave to proceed in forma pauperis and will deem his complaint filed.

In his complaint, Plaintiff states that the events giving rise to his claims occurred at SCI Dallas "from February 2023 [un]til July 20, 2023." (Doc. No. 1 at 4.) In support, he sets forth allegations concerning the allegedly inadequate medical care he received, as well as the various attempts he made to pursue his administrative remedies. More specifically, Plaintiff alleges that, on February 24, 2023, "medical" stopped providing him with distilled water, which is "essential to [his] life or death" and can only be obtained by "medical[.]" (Id.) Plaintiff seems to suggest that he needs distilled water for his "C-Pap" machine ("CPAP"), which he uses while he sleeps. (Id. (explaining that he "cannot breathe without" the machine).) In connection with this alleged medical need, Plaintiff claims that he "was told" that the CDC had "okayed tap water[,]" but that he later discovered this "was a lie[.]" (Id.)

"To add to injury," Plaintiff asserts that Defendant Ransom "was aware" that the institution had water contamination issues, which caused "them" to order gallons of treated water and caused them to advise inmates not to drink the water. (Id.) In addition, Plaintiff also asserts that Defendant Abel "did not give [Plaintiff] distill[ed] water" on June 9, 2023[,]" which Plaintiff contends was almost two (2) months after the date on which the distilled water was to be "re-issue[d]." (Id.) Plaintiff further alleges that Defendant Abel called him a "nigger." (Id.)

In addition to these allegations concerning his CPAP machine and the need for distilled water, Plaintiff also claims that he was "fearful" and so he attempted to raise his concerns with individuals at the prison. (Id. at 4.) In support, Plaintiff alleges that he wrote "countless"

requests to Defendant Mareinkowski, all of which went "ignored[.]"  (Id.)  Plaintiff also alleges that Defendants Ransom and Hogan "methodically" and "maliciously" hindered him from pursuing the prison grievance process.  (Id. at 5.)  Specifically, he claims that they refused to give him appropriate grievance appeal forms, harassed him for requesting them, and either refused to process his grievance appeals or did not respond to them.  (Id.); see also id. at 6 (stating that complainants do not have access to grievances and grievance appeals)).

In connection with all of these allegations, Plaintiff claims that he was denied "adequate medical attention" and his "due process rights" were violated.  (Id. at 5, 6.)  Plaintiff also claims that his PTSD has been "[i]nflamed" and that he has shortness of breath.  (Id.)  As for relief, he seeks his immediate transfer to a prison in his "region (East PA)," single cell status, examination by independent health care providers, and "money[.]"  (Id.)

Finally, attached to Plaintiff's complaint are the following documents: (1) an article titled, "Sleep Apnea: Tap Water Can Be Dangerous to Use in CPAP Machines" (Doc. No. 1-1); and (2) various administrative remedy documents that Plaintiff filed at SCI Dallas (Doc. No. 1-2).  In those administrative remedy documents,[2] Plaintiff complains that he needs distilled water for his CPAP machine.  (Id.)  In addition, and while not alleged in Plaintiff's complaint, those various administrative remedy documents suggest that there was "direction given by BHCS[ ] and Wellpath personnel[,]" and that there was a subsequent change to that direction, concerning the type of water that is to be used for a CPAP machines.  See, e.g., (id. at 5).

---

[2]  Some of the documents cannot be read because the ink has faded. (Doc. No. 1-2 at 8–9.)

## II.   LEGAL STANDARD

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  See 28 U.S.C. § 1915A(a).  If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint.  See id. § 1915A(b)(1).  District courts have a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis and prisoners challenging prison conditions.  See id. § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . ."); 42 U.S.C. § 1997e(c)(1) ("The [C]ourt shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility if the [C]ourt is satisfied that the action . . . fails to state a claim upon which relief can be granted.").

In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999).  To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).  When evaluating the plausibility of a

complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. See id. at 679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit ("Third Circuit") has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). In addition, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).

## III.  DISCUSSION

The Court construes Plaintiff's pro se complaint as asserting violations of his Eighth and Fourteenth Amendment rights pursuant to the provisions of Section 1983.  (Doc. No. 1 (alleging that he was denied "adequate medical attention" and his "due process" rights were violated).) Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983.  Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States."  See Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted).  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right."  See id. (citation omitted).

Additionally, in order to plausibly state a claim under Section 1983, a plaintiff must allege that each defendant was personally involved in the act or acts that he claims violated his constitutionally protected rights.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode, 845 F.2d at 1207); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)).  Thus, in pursuing any Section 1983 claim

6

against prison officials, a plaintiff may not rely solely on respondeat superior, see id. (citation omitted), which is a theory of liability that "arises 'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm[,]" see Santiago, 629 F.3d at 128 (quoting Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 692 (1978)).

### A.   Defendant Wellpath

Plaintiff's complaint names Wellpath, a healthcare provider for the DOC, as a Defendant. (Doc. No. 1.)  The Third Circuit has explained that a private company, which is providing health services at a correctional facility, "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability."  See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003) (citing Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 691 (1978)).  Rather, in order for such a company to be held responsible, the plaintiff must show that there was a relevant company policy or custom and that this policy or custom resulted in the asserted constitutional violations.  See id. at 583–84 (citing Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997)).

Thus, the question before the Court is whether Plaintiff's complaint has plausibly alleged that Defendant WellPath had a policy or custom that resulted in a violation of his constitutional rights.  The Court answers this question in the negative because Plaintiff's complaint has not alleged the existence of any policy or custom.  Accordingly, the Court will dismiss Plaintiff's Section 1983 claim against Defendant WellPath.  See Palakovic v. Wetzel, 854 F.3d 209, 232 (3d Cir. 2017) (explaining that, "[t]o state a claim against a private corporation providing medical services under contract with a state prison system, a plaintiff must allege a policy or custom that resulted in the alleged constitutional violations at issue" (citing Natale, 318 F.3d at

583–84)); Alexander v. Monroe Cnty., 734 F. App'x 801, 805 (3d Cir. 2018) (unpublished) (stating that, in order for the administratrix of decedent-prisoner's estate to have established her claim against Prime Care, the corporation providing medical services at the county correctional facility, the administratrix would have had to have shown "'a policy or custom that resulted in the alleged constitutional violations'" (quoting Palakovic, 854 F.3d at 232) (emphasis omitted)).

### B.      Defendants Ransom, Hogan, and Mareinkowski

Plaintiff's complaint names Defendants Ransom, Hogan, and Mareinkowski, the superintendent, grievance coordinator, and healthcare administrator at SCI Dallas, as Defendants on the basis that they allegedly violated his Fourteenth Amendment due process rights when they interfered with his complaints and grievances/grievance appeals by either not responding to him or by wrongfully denying him grievance forms and grievance appeal forms.[3] (Doc. No. 1.) The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" See U.S. Const. amend. XIV, § 1. "The core concept of due process is protection against arbitrary government action" and, as that core concept has developed over time, "it has come to have both substantive and procedural components." Evans v. Sec'y Pennsylvania Dep't of Corr., 645 F.3d 650, 658 (3d Cir. 2011) (citation and internal citation omitted). The procedural component "governs the manner in which the government may infringe upon an individual's life, liberty, or property[,]" see id. at 662, and the substantive component "limits what government may do regardless of the fairness of procedures that it employs[.]" See Boyanowski v. Cap. Area Intermediate Unit, 215 F.3d 396, 399 (3d Cir. 2000) (citation omitted).

---

[3]  It is unclear whether Plaintiff also seeks to assert an Eighth Amendment claim against Defendant Mareinkowski and, thus, in an abundance of caution, Plaintiff will be granted leave to allege such a claim in his amended complaint, should he file one.

In order to state either a procedural or substantive due process claim, Plaintiff must establish, as a threshold matter, that he has was deprived of an individual interest that is encompassed by the Fourteenth Amendment's protection of life, liberty, and property.  See McCurdy v. Dodd, 352 F.3d 820, 825–26 (3d Cir. 2003) (explaining that, in Section 1983 actions, courts must address the threshold issue of whether the alleged due process right implicates a constitutional right at all); Hill v. Borough of Kutztown, 455 F.3d 225, 233–34 (3d Cir. 2006) (stating that, in order for a plaintiff to plausibly state a claim under Section 1983 for the "deprivation of procedural due process rights, the plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law" (citation and internal quotation marks omitted));  Skiles v. City of Reading, 449 F. App'x 153, 157 (3d Cir. 2011) (unpublished) (stating that, in order for a plaintiff to plausibly state a claim under Section 1983 for the deprivation of substantive due process rights, the plaintiff must allege that (1) "he has a protected constitutional interest at issue" and (2) government employees engaged in conduct that "shocks the conscience[,]" which is a standard that seeks to protect an individual from "arbitrary action of government" (citation and internal citations and internal quotation marks omitted)).

Here, to the extent that Plaintiff's complaint seeks to assert a protected liberty interest in the grievance procedures at SCI Dallas (Doc. No. 1 at 5), the Third Circuit has held—albeit in non-precedential opinions—that prisoners do not have a constitutional right to, or protected liberty interest in, such grievance procedures. See, e.g., Ransome v. Longstreth, No. 23-1726, 2023 WL 6122139, at *2 (3d Cir. Sept. 19, 2023) (unpublished) (concluding that the prisoner's "allegations regarding violations of the prison's administrative grievance policy do not amount to

a constitutional violation" (citations omitted)); Gerholt v. Wetzel, 858 F. App'x 32, 34 (3d Cir. 2021) (unpublished) (stating that, "[i]nsofar as [the prisoner] alleged a Due Process violation arising out of the handling of his grievance, the District Court correctly recognized that prisoners do not have a constitutional right to prison grievance procedures" (citations omitted)); Anderson v. Phelps, 830 F. App'x 397, 398 (3d Cir. 2020) (unpublished) (concluding that the prisoner's due process claims were "meritless" as he lacked a cognizable liberty interest "in having access to grievance procedures . . . " (citation omitted)); Glenn v. DelBalso, 599 F. App'x 457, 459 (3d Cir. 2015) (unpublished) (explaining that "[a]ccess to prison grievance procedures is not a constitutionally-mandated right, and allegations of improprieties in the handling of grievances do not state a cognizable claim under [Section] 1983" (citations omitted)); Fears v. Beard, 532 F. App'x 78, 81 (3d Cir. 2013) (unpublished) (explaining that prisoners do not "have a liberty interest protected by the [D]ue [P]rocess [C]lause in the grievance procedures" (citation omitted)); Heleva v. Kramer, 214 F. App'x 244, 247 (3d Cir. 2007) (unpublished) (stating that "[t]he District Court was correct . . . in concluding that defendants' alleged obstruction of prison grievance procedures does not give rise to an independent claim[,] since "[p]risoners do not have a constitutional right to prison grievance procedures" (citation omitted)).

In accordance with this line of case law, district courts in the Third Circuit have repeatedly rejected prisoners' due process claims based upon prison grievance procedures. See, e.g., Johnson v. Wetzel, No. 22-cv-00382, 2023 WL 4424828, at *8 (E.D. Pa. July 7, 2023); Ray v. McDonald, No. 20-cv-01697, 2022 WL 969618, at *6 (M.D. Pa. Mar. 30, 2022); Williams v. Bonds, No. 18-cv-13253, 2019 WL 1529961, at *5 (D.N.J. Apr. 9, 2019); Hubert v. Wetzel, No. 18-cv-00354, 2018 WL 4828470, at *10 (W.D. Pa. Oct. 4, 2018); Brathwaite v. Holman, No. 04-cv-01542, 2006 WL 1995137, at *8 (D. Del. July 17, 2006).

Accordingly, even if a grievance process is offered to Plaintiff by the DOC, and even if Plaintiff avails himself of that process, which Plaintiff asserts he has attempted to do here, the alleged improprieties concerning that process do not give rise to a constitutional claim under the Fourteenth Amendment. As a result, Plaintiff's Fourteenth Amendment due process claim fails to state a claim upon which relief can granted. The Court will, therefore, dismiss this claim.

C. **Defendant Abel**

Plaintiff's complaint names Defendant Abel, a physician's assistant at SCI Dallas, as a Defendant on the basis that he allegedly violated Plaintiff's Eighth Amendment rights when he denied Plaintiff medical care in connection with the distilled water for his CPAP machine. (Doc. No. 1.) The United States Constitution "does not mandate comfortable prisons, . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment[.]" See Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citation and internal citation and quotation marks omitted). In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); Farmer, 511 U.S. at 832 (explaining that the Eighth Amendment imposes a duty on prison officials to, inter alia, ensure that prisoners receive adequate medical care (citations omitted)). As explained by the United States Supreme Court, prison officials violate the Eighth Amendment "when they are deliberately indifferent to an inmate's serious medical need." See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

"[T]he concept of a serious medical need . . . has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences."

Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991).  The "condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death[,]" and "the condition must be one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  See id. (citation and internal quotation marks omitted).

The concept of "deliberate indifference" requires that the prison official actually knew of and disregarded "an excessive risk to inmate health or safety[.]"  See Farmer, 511 U.S. at 837.  This means that the prison official was aware of facts from which the inference could be drawn that an excessive risk of harm exists, and the prison official must also draw that inference.  See id.  The Third Circuit has found deliberate indifference when a "prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  See Rouse, 182 F.3d at 197 (citation omitted).

Here, even assuming arguendo that Plaintiff's complaint has sufficiently alleged a serious medical need concerning the distilled water for his CPAP machine, the Court finds that it has not alleged facts upon which the inference could be made that Defendant Abel acted with any deliberate indifference to that need.  More specifically, there are no specific factual allegations in the complaint that Defendant Abel actually knew of and disregarded an excessive risk to Plaintiff's health or safety.  See Farmer, 511 U.S. at 837 (explaining that the prison official must be aware of facts from which the inference could be drawn that an excessive risk of harm exists, and the prison official must also draw that inference).  At most, Plaintiff's complaint broadly and vaguely alleges that Defendant Abel provided him with distilled water "2 months later than the so-called date to re-issue distill[ed] water[.]" (Doc. No. 1 at 4.)  However, Plaintiff's complaint

does not provide any factual context to this allegation such that the Court could reasonably infer deliberate indifference on the part of Defendant Abel.  Accordingly, the Court concludes that Plaintiff's complaint fails to state an Eighth Amendment claim upon which relief can be granted.  As such, this claim will be dismissed.

> D.     **Leave to Amend**

The final issue is whether Plaintiff should be granted leave to amend his complaint.  Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]"  See id.  The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted."  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the Court finds that granting Plaintiff leave to amend with respect to his Fourteenth Amendment due process claims against Defendants Ransom, Hogan, and Mareinkowski would be futile as no amendment could cure the legal deficiencies discussed above.  The Court cannot say, however, that granting Plaintiff leave to amend his

13

Eighth Amendment claim against Defendant Abel or his Section 1983 claim against Defendant Wellpath would be futile and, thus, the Court will grant Plaintiff leave to file an amended complaint in order to attempt to cure the deficiencies identified above. Additionally, and as noted above, the Court will also grant Plaintiff leave to attempt to assert an Eighth Amendment claim against Defendant Mareinkowski.

Plaintiff is advised that the amended complaint must be complete in all respects. It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed. The amended complaint shall set forth Plaintiff's claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Finally, Plaintiff is cautioned that neither conclusory allegations nor broad allegations will set forth a cognizable claim.

### IV.  CONCLUSION

For the foregoing reasons, the Court will dismiss Plaintiff's complaint (Doc. No. 1) for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2). The Court will also grant Plaintiff leave to file an amended complaint. An appropriate Order follows.

                                         s/ Yvette Kane
                                         Yvette Kane, District Judge
                                         United States District Court
                                         Middle District of Pennsylvania