**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL SHERMAN ALLEN,** | : | |
| **Plaintiff** | : | **No. 1:23-cv-01404** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **MR. ABEL (PA), et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Currently before the Court are Defendants' motion to dismiss pro se Plaintiff Michael Sherman Allen ("Allen")'s amended complaint and their amended motion to dismiss pro se Plaintiff Michael Sherman Allen ("Allen")'s amended complaint. For the reasons stated below, the Court will deny as moot the original motion to dismiss, grant the amended motion to dismiss, dismiss Allen's claims with prejudice in part and without prejudice in part, and allow him leave to file a second amended complaint as to those claims that the Court will dismiss without prejudice.

## I. BACKGROUND

Allen, a convicted and sentenced state prisoner currently incarcerated at Pennsylvania State Correctional Institution Dallas ("SCI Dallas"), commenced this action by filing a complaint which the Clerk of Court docketed on August 23, 2023. (Doc. No. 1.) Allen named as Defendants: (1) Mark Abel ("Abel"), a Physician's Assistant at SCI Dallas; (2) Wellpath, LLC ("Wellpath"), a company providing healthcare services at SCI Dallas; (3) Kevin Ransom ("Ransom"), Superintendent of SCI Dallas; (4) Stephanie Marcinkowski, a Health Administrator at SCI Dallas; and (5) N. Hogan ("Hogan"), a Grievance Coordinator at SCI Dallas. See (id. at 1–3). Allen's allegations against Defendants relate to events that allegedly occurred between February 2023 through July 20, 2023, and involved, inter alia: (1) "Medical" providing him with

tap water instead of distilled water for his CPAP machine to assist with his respiratory issues; (2) Ransom being aware that SCI Dallas had water contamination issues; (3) Abel not giving him distilled water on June 9, 2023, almost two months after distilled water was to be "reissue[d]," as well as calling him a "nigger"; and (4) Ransom and Hogan "methodically" and "maliciously" hindering him from pursuing the prison grievance process by refusing to give him grievance appeal forms, harassing him for requesting the forms, and either refusing to process his grievance appeals or not responding to them. See (id. at 4–6). Based on these allegations, Allen asserted claims under 42 U.S.C. § 1983 for deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution as well as due process violations under the Fourteenth Amendment. See (id. at 5, 6). For relief, Allen sought his immediate transfer to a prison in his "region (East PA)," single cell status, examination by independent health care providers, and "money." See (id. at 6).

When Allen submitted his complaint, he neither paid the fee nor applied for leave to proceed in forma pauperis; as such, an Administrative Order issued on August 23, 2023, requiring him to either remit the fee or file a proper application for leave to proceed in forma pauperis. (Doc. No. 3.) A week later, Allen filed an application for leave to proceed in forma pauperis ("IFP Application") and a certified copy of his prisoner trust fund account statement. (Doc. Nos. 4, 5.)

After reviewing the IFP Application and screening the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) 1915A(a), the Court issued a Memorandum and Order on October 17, 2023, which, inter alia: (1) granted the IFP Application; (2) dismissed Allen's claims against Defendants without prejudice to him filing an amended complaint; and (3) provided Allen with a period of thirty days to file an amended complaint. See (Doc. Nos. 8, 9).

Allen, after receiving two extensions of time to file his amended complaint, see (Doc. Nos. 10–13), timely filed his amended complaint in which he names as Defendants only Abel, Wellpath, and Marcinkowski, on February 20, 2024.[1] (Doc. No. 14.) In his amended complaint, Allen alleges that from February 24, 2023, through July 2023, he went to SCI Dallas's Medical Department for distilled water for his CPAP machine, which is "essential to [his] life or death situation" because it "allows [him] to breath [sic] at night while sleeping and is prescribed by a [l]icense[d] medical doctor." See (id. ¶ 8). He also has a "distill [sic] water prescription card for refills," and he can only obtain distilled water for his CPAP machine from the medical department. See (id. ¶¶ 15, 23).

On or about February 24, 2023, Allen submitted a sick call in which he requested distilled water for his CPAP machine because he ran out of water. See (id. ¶ 16). Abel refused to provide Allen with distilled water "as require[d] by doctors and medical staffs." See (id.). Abel also "confronted [Allen] in an aggressive manner, . . . and lied that [the Centers for Disease Control ("CDC")] cleared tap water safe for [CPAP] machine[s]." See (id.).

Following this exchange, Allen asked to see the institution's doctor, only to have Abel refuse the request. See (id. ¶ 18). Allen then had to "use contaminated" water to "stay alive." See (id.).

---

[1] The federal "prisoner mailbox rule" provides that a pro se prisoner's submission is deemed filed "at the time [the prisoner] delivered it to the prison authorities for forwarding to the court clerk." See Houston v. Lack, 487 U.S. 266, 276 (1988). Unfortunately, when filing his amended complaint, Allen did not include a declaration stating when he delivered the petition to prison authorities for mailing to the Clerk of Court. See (Doc. No. 14 at 9). Nonetheless, the envelope containing the amended complaint is postmarked February 20, 2024. See (id.). As such, the Court uses February 20, 2024, as the amended complaint's filing date even though the Clerk of Court did not docket it until February 26, 2024. Cf. Fed. R. App. P. 4(c)(1)(A)(ii) (providing that evidence such as a postmark may establish the date of filing of a notice of appeal by a prisoner).

Since that time, Allen submitted multiple sick calls and filed grievances seeking to have the medical department provide him with distilled water "before further damage to his health" occurred. See (id. ¶ 19). Allen alleges that "on information and beliefs [sic], when a prisoner files a grievance, the grievance staff call the matter to the attention of those individuals responsible for the matters that the grievance concerns." See (id. ¶ 20). When this occurs, "it more likely than not trigger[s] a retaliatory reaction for prisoners." See (id.).

On July 9, 2023, Allen went to Sick Call, which is "how prisoners request medical assistance," and non-Defendant Nurse Season "attempted to take [his] vital [sic] and weigh [him]." See (id. ¶ 9). Allen informed Nurse Season that he ran out of distilled water for his CPAP machine and needed a refill. See (id.). Abel overheard this conversation and "immediately became very angry, aggressive, and yell[ed] at Nurse Season," saying "that's not the fucking way we do things and he knows that[;] he need[s] to sign [up] for sick call [and] come back to see me." See (id.). This caused Allen to "immediately start shaking because of [his post-traumatic stress disorder arising] from [a] prior incident with prison staff [in which he] was assaulted by [m]ultiple staff members who had display[ed] aggressive behavior toward[s him] for speaking up." See (id.).

At some point (presumably) thereafter, Allen informed non-Defendant Physician's Assistant Lauren ("PA Lauren") that he "would not feel comfortable speaking with Abel after the outburst." See (id. ¶ 10). PA Lauren then "informed the officer at the desk . . . of the incident, who in turn tried to have [PA Lauren] assist [Allen]." See (id.). Apparently, this "just upset Abel even more," and he "whether directly or indirectly," stated that "these nigga's think they're entitled." See (id.). Abel also told Allen he could leave because he was not getting any water insofar as the CDC cleared tap water as safe for CPAP machines. See (id.).

Allen responded to Abel by informing him that he "already wrote to the health administrator" about this, which caused Abel to pick up all of Allen's request slips addressed to the administrator and repeat that he already told Allen that the CDC determined that tap water was safe for a CPAP machine. See (id.). Allen asked Abel to "put it in writing," and Abel gave Allen "a direct order to leave and go back to [his] housing unit before he put [him] in the Restricted Housing Unit." See (id.).

Allen alleges that non-Defendant Dr. Prince examines all chronic care patients every quarter, and Dr. Prince examined him three to four times a year since 2019. See (id. ¶ 11). However, since the incident, Allen's chronic care appointments have been scheduled on "holidays." See (id.). When Allen complained about this, Abel "intentionally schedule[d Allen's] appointment on holidays or whenever Dr. Prince is not working." See (id.).

On or about the same time as Allen's incident(s) with Abel, SCI Dallas was "experiencing water contamination." See (id. ¶12). As a result, the Superintendent "was supplying each housing unit with fifty-five gallon jugs of water every two hours or as needed and advising prisoners not to drink the tap water for safety [and] health reasons." See (id.).

"Our of fear of retaliation," Allen wrote "a number of staff request[s] complainting [sic] about Abel [sic] ill-treatment, aggressive behavior, denial of distill [sic] water[,] and medical care." See (id. ¶13). All requests went unanswered. See (id.). However, "[i]n a[] retaliatory manner" through "collective[] effort," Allen "would be denied recreational time outside his cell, [have] his name stretch [sic] from the library list, late for shower period, [have his] commissary bubble sheet [not] scan[,] and [be] den[ied] other privileges others so freely enjoy[ed]." See (id. ¶ 14).

Allen alleges that as his "condition worsen [sic]," he contacted a family friend who also has a CPAP machine at home. See (id. ¶ 24). The family friend told Allen that the CDC never cleared tap water for CPAP machines and provided documentation from the CDC's website to Allen. See (id.).

Due to Abel's actions in not providing Allen with distilled water for his CPAP machine, and lying about the CDC approving tap water for use in CPAP machines, Allen suffered "respiratory complication [sic], difficult [sic] breathing, spitting up heavy brown flymm [sic], tonsil swollness [sic], fatigue, lack of sleep[,] and severe headaches." See (id. ¶ 25). Allen repeatedly wrote Marcinkowski, who is "responsible for medical care, . . . arranging specialized medical care in and outside of prison, [and] ultimately responsible to ensure medical [sic] abide [sic], follow rules [and] regulation [sic][,] and [ensure that] all medical staff is trained, certified[,] and able to perform [t]ask[s]," yet, Marcinkowski "never thought inquiring about [sic] a prisoner seeking medical help." See (id. ¶ 21, 25). Marcinkowski was aware of Allen's medical condition insofar as Marcinkowski was "in charge [of] all seriously ill prisoners with a knowing history of chronic illness," and he became aware that Allen was being denied distilled water despite it being essential to his health and well-being. See (id. ¶ 26).

As for Wellpath, Allen asserts that it is "responsible for providing the institution with proper medication, nurse [sic], practitioner [sic] follow [sic] proper protocol, medical guidelines, custom, policy[,] and procedures." See (id. ¶ 22). Allen alleges that Wellpath's practice and custom of failing to provide distilled water resulted in him "using contaminated tap water." See (id. ¶ 27).

Based on these allegations, Allen asserts Section 1983 Eighth Amendment claims for deliberate indifference to his serious medical needs against Defendants in their official and

individual capacities. See (id. ¶¶ 7, 27–28). For relief, Allen seeks (1) various declarations that essentially indicate that Defendants violated his Eighth Amendment rights and (2) compensatory damages. See (id. ¶¶ 29–32).

On May 1, 2024, the Court issued an Order directing the Clerk of Court to send copies of the amended complaint and waiver of service forms to Defendants. (Doc. No. 15.) Approximately a month later, on June 5, 2024, Defendants filed a motion to dismiss Allen's amended complaint under Federal Rule of Civil Procedure 12(b)(6) along with a supporting brief. (Doc. Nos. 20, 21.)

Allen never filed a response to Defendants' motion. He did, however, file a motion to appoint counsel on November 13, 2024. (Doc. No. 22.) Less than a week later, on November 19, 2024, Defendants filed a suggestion of bankruptcy and notice of stay in which they indicated that Wellpath Holdings, Inc. and its affiliated companies (which included Defendant Wellpath) filed petitions under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), and those cases were jointly administered under case number 24-90533. See (Doc. No. 23 at 1–4). Allen filed a response to Defendants' suggestion of bankruptcy and notice of stay on December 18, 2024 (Doc. No. 24), and he later filed a second motion to appoint counsel on February 10, 2025 (Doc. No. 26). On February 24, 2025, this Court issued an Order which, inter alia, denied without prejudice Allen's motions to appoint counsel and stayed this action pending the outcome of Wellpath's bankruptcy proceedings. (Doc. No. 27.)

On May 15, 2025, Defendants filed a supplement in which they notified the Court that the Bankruptcy Court confirmed Wellpath's plan of organization with an effective date of May 9, 2025. See (Doc. No. 28 at 1). Defendants then filed an amended motion to dismiss this action

pursuant to Rule 12(b)(6) and supporting brief on September 5, 2025. (Doc. Nos. 30, 31.) On November 24, 2025, this Court issued an Order which, inter alia, lifted the stay and directed Allen to file a response to Defendants' amended motion to dismiss within 21 days. (Doc. No. 32.) To date, Allen has not filed a response to Defendants' amended motion to dismiss or sought an extension of time to do so.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6) Motions to Dismiss

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 312 (3d Cir. 2010). The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is

facially plausible. See id. The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the Third Circuit Court of Appeals has identified the following steps a district court must take under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 679). When following these steps, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In addition, in the specific context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Higgs v. Att'y Gen., 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a pro se litigant, we have a special obligation to construe [their] complaint liberally" (citation and internal quotation marks omitted)). Therefore, a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks

omitted) (quoting Estelle, 429 U.S. at 106). This means the Court must always "remain flexible, especially 'when dealing with imprisoned pro se litigants . . . .'" See Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244–45 (3d Cir. 2013))). Moreover, when construing a pro se complaint, the court will "apply the relevant legal principle even when the complaint has failed to name it." See Mala, 704 F.3d at 244. However, pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" See Vogt, 8 F.4th at 185 (quoting Mala, 704 F.3d at 245).

**B. Screening the Amended Complaint Under 28 U.S.C. §§ 1915A and 1915(e)(2)**

Under 28 U.S.C. § 1915A, this Court must "review . . . a[n amended] complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." See 28 U.S.C. § 1915A(a). If an amended complaint fails to state a claim upon which relief may be granted, the Court must dismiss the amended complaint. See id. § 1915A(b)(1). The Court has a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis. See id. § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action . . . fails to state a claim on which relief may be granted . . . ."). In reviewing legal claims under Sections 1915A(b) or 1915(e)(2), the Court applies the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See, e.g., Smithson v. Koons, No. 15-cv-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a[n amended] complaint for failure to state a claim under § 1915A(b)(1) [and] § 1915(e)(2)(B)(ii) . . . is the same as that for dismissing a[n amended] complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), report and recommendation adopted, 2017 WL 3008559 (M.D. Pa. July 14, 2017); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa.

2010) (explaining that when reviewing a[n amended] complaint for possible dismissal pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)").

**C. Section 1983**

Section 1983 is the statutory vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. This statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

See id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002)). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

**D. Supervisory Liability Under Section 1983**

To plausibly plead a Section 1983 claim against a supervisory official, a plaintiff's allegations must satisfy one of two theories of supervisory liability: first, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and second, "a supervisor may be

personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." See A.M. ex rel. J.M.K. v. Luzerne County Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014) (explaining the requirements for the liability of supervisory officials in section 1983 claims and describing the "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates"), rev'd on other grounds sub nom., Taylor v. Barkes, 575 U.S. 822 (2015).

To allege a plausible claim for supervisory liability under the first theory—the policy-and-practice strand of supervisory liability—a plaintiff must

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury.

See Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 227 (3d Cir. 2015) (quoting Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001)). For the second theory of supervisory liability—participating in, directing others to, or knowledge and acquiescence of constitutional violation—generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. See Saisi v. Murray, 822 F. App'x 47, 48 (3d Cir. 2020) (unpublished) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'

However, a director cannot be held liable 'simply because of [their] position as the head of the [agency].'" (quoting Evancho v. Fisher, 423 F.3d 347, 354 (3d Cir. 2005))); Zigler v. Warren, No. 21-cv-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of [their] employees solely because [they are] a supervisor."). Additionally, "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." See Chavarriaga, 806 F.3d at 222 (citing Baker v. Monroe Twp., 50 F.3d 1186, 1194 (3d Cir. 1995); Rode v. Dellarciprete, 845 F.2d 1195, 1201 n.6 (3d Cir. 1988)).

### E. Eighth Amendment Claims for Deliberate Indifference to Serious Medical Needs

For a plaintiff to plead a plausible Eighth Amendment claim based on the failure to provide adequate medical treatment, they must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. See Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." See id. at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks omitted). A serious medical need also exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." See Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991).

A plaintiff properly alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); see also Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (explaining that a prisoner-plaintiff can show deliberate indifference where prison official "intentionally den[ied] or delay[ed] access to medical care or intentionally interfer[ed] with the treatment once prescribed" (internal citations and quotation marks omitted)). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); see also Estelle, 429 U.S. at 106 (explaining that complaints that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); Hope v. Warden York County Prison, 972 F.3d 310, 330 (3d Cir. 2020) ("Deliberate indifference requires significantly more than negligence."); Montanez v. Price, 154 F.4th 127, 141 (3d Cir. 2025) (pointing out that "disagreement between the prisoner and medical personnel over the proper course of treatment" does not show deliberate indifference (citing Spruill, 372 F.3d at 235)), cert. denied sub nom. Pennsylvania v. Montanez, No. 25-1073, 2026 WL 1718015 (U.S. June 15, 2026).

## III. DISCUSSION

### A. Defendants' Motion to Dismiss

#### 1. Allen's Failure to File a Response to Defendants' Rule 12(b)(6) Motion to Dismiss

As noted above, Allen did not file a response in opposition to Defendants to dismiss after the Court provided him with twenty-one days to do so following the Court lifting the stay on November 24, 2025. Additionally, Allen has not filed a motion seeking an extension of time to file a response to the motion.

Although Local Rule 7.6 supports this Court deeming Defendants' amended motion to dismiss as unopposed, the Third Circuit Court of Appeals disfavors district courts granting Rule 12(b)(6) motions based on the opposing party's failure to comply with a Local Rule. See Stackhouse v. Mazukiewicz, 951 F.2d 29, 30 (3d Cir. 1991) (concluding that under Anchorage Associates v. Virgin Islands Board of Tax Review, 922 F.2d 168 (3d Cir. 1990), the district court should not have dismissed a pro se prisoner-plaintiff's complaint "solely on the basis of" a local rule which allowed the district court to deem a motion as unopposed if the opposing party failed to file a brief "without any analysis of whether the complaint failed to state a claim upon which relief can be granted, as provided in [Rule 12(b)(6)]"); see also Gary v. Pa. Human Relations Comm'n, 497 F. App'x 223, 226 (3d Cir. 2012) (unpublished) ("[M]otions to dismiss should not be granted without an analysis of the merits of the underlying complaint, notwithstanding local rules regarding the granting of unopposed motions.").[2] The Third Circuit has explained that "if a

---

[2] Stackhouse involved an appeal from a dismissal entered in this District pursuant to then-Local Rule 401.6, which is now Local Rule 7.6. See 951 F.2d at 29 (explaining that Rule 12(b)(6) motion was granted as unopposed pursuant to Local Rule 401.6); Jaludi v. Citigroup, No. 15-cv-02076, 2016 WL 11788671, at *1 n.1 (M.D. Pa. Mar. 7, 2016) (noting that Local Rule 401.6 was renumbered Local Rule 7.6 via an amendment to the Local Rules on December 30, 1993).

motion to dismiss is granted solely because it has not been opposed, the case is simply not being dismissed because the complaint has failed to state a claim upon which relief may be granted. Rather, it is dismissed as a sanction for failure to comply with the local court rule." See Stackhouse, 951 F.2d at 30.

Despite disfavoring district courts granting Rule 12(b)(6) motions as unopposed, the Third Circuit has explained that there are certain cases in which a Rule 12(b)(6) motion may be granted as unopposed. See id. ("In reaching our result, we do not suggest that the district court may never rely on the local rule to treat a motion to dismiss as unopposed and subject to dismissal without a merits analysis. . . . Thus, our holding is not broad."). Such cases include those "where the failure of a party to oppose a motion will indicate that the motion is in fact not opposed, particularly if the party is represented by an attorney and in that situation the rule may be appropriately invoked," as well as "where a party fails to comply with the rule after a specific direction to comply from the court . . . ." See id.

Here, the Court will not deem Defendants' amended motion to dismiss as unopposed because Allen is proceeding pro se, and the Court has not issued an Order directing that he file a response to Defendants' Rule 12(b)(6) motions and informing him of the possible sanctions if he failed to file a response. Therefore, the Court will consider Defendants' motion on its merits.

**2. The Merits of Defendants' Motion to Dismiss**

Defendants argue that the Court should: (1) dismiss Allen's claim against Wellpath because of the bankruptcy discharge, see (Doc. No. 31 at 7–9); (2) dismiss Allen's claims against Abel and Wellpath because Allen fails to plead a plausible claim for deliberate indifference against them in his amended complaint, see (id. at 9–21); and (3) dismiss Allen's claim against

Marcinkowski because he, inter alia, failed to plead her personal involvement in any alleged constitutional violation, see (id. at 21–24). The Court will address each argument in turn.

**a. Wellpath's Bankruptcy Discharge**

Defendants first argue that the Court should dismiss Allen's Eighth Amendment claim against Wellpath because of what transpired during Wellpath's bankruptcy proceedings. Wellpath attaches to its motion the Bankruptcy Court's May 1, 2025 "Findings of Fact, Conclusions of Law, and Order (I) Confirming the First Amended Joint Chapter 11 Plan of Reorganization of Wellpath . . . and Certain of Its Debtor Affiliates and (II) Approving the Disclosure Statement on a Final Basis." See (Doc. Nos. 31-2, 31-3). Under the terms of the Amended Plan, which became effective on May 9, 2025, all "Claims and Causes of Action" (as those terms are defined therein) against Wellpath and its affiliated debtors were discharged, and all holders of claims are permanently enjoined from commencing or continuing any proceeding in connection with such claims, or enforcing recovery from, among others, Wellpath, the other debtors, and the debtors' estates. See id.; see also 11 U.S.C. § 524(a)(2) ("A discharge in a case under this title . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . .").

On June 4, 2025, the Bankruptcy Court issued a General Form of Order Regarding Lift Stay Motions ("Stay Order").[3] In re Wellpath Holdings, Inc., No. 24-bk-90533 (Bankr. S.D. Tex. filed Nov. 11, 2024) ("Wellpath"), ECF No. 2907. The Stay Order clarified the impact of the Amended Plan on actions against Wellpath, its related entities, and other debtors. Pursuant to

[3] Although not attached by Defendants to their motion, the Court takes judicial notice of the filings in Wellpath's Chapter 11 bankruptcy proceedings.

Article IX.A. of the Amended Plan and paragraph 3 of the Stay Order, all "Claims and Causes of Action" against Wellpath, among others, were discharged. See (Doc. No. 31-3 at 54–55). In addition, under Article IX.F of the Plan, holders of "Claims and Causes of Action" that were discharged or released were permanently enjoined from, among other things, continuing any action with respect to these claims or recovering any judgment with respect to such claims. See (id. at 60). Moreover, this Article provides that holders of claims subject to the Third-Party Release ("TPR") who did not opt-out were permanently enjoined from "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan." See (id.). Nevertheless, holders of claims or interests who affirmatively elected to opt out from the TPR could bring or continue to pursue claims against non-Debtor Defendants. See Wellpath, ECF No. 2907 at 3.

The Court also notes that a Liquidating Trust has assumed the Debtors' liability for all General Unsecured Claims, including personal injury and wrongful death claims that arose before the Petition Date. See (Doc. No. 31-3 at 32–36). The Liquidating Trust is funded solely by assets transferred to it under the Plan, and recoveries on such claims are limited to a pro-rata distribution from the Trust. Enjoined Parties may not seek payment for this liability from the Debtors, the Post-Restructuring Debtors, or the property of either entity beyond this distribution. See (id.). Holders of Claims against the Debtors are subject to the Trust Distribution Procedures ("TDPs"), including the non-binding alternative dispute resolution process set forth therein to determine, if necessary, the allowed amount for their Claim. See Wellpath, ECF No. 2907 at 2.

Overall, the Bankruptcy Court discharged Wellpath from liability for any claims arising before the filing of its bankruptcy petition on November 11, 2024. See id. Here, Allen alleges

that he received inadequate medical care based on events that occurred from February through July 2023. See (Doc. No. 14 at ¶¶ 8–28). Because Allen's allegations and corresponding claims predate the date of Wellpath's bankruptcy petition, Defendants contend that this Court should dismiss Allen's claims against Wellpath with prejudice pursuant to the bankruptcy discharge. See (Doc. No. 31 at 7–8). The Court agrees.

Under Chapter 11 of the Bankruptcy Code, "[a] discharge in a [Chapter 11 bankruptcy] case . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." See 11 U.S.C. § 524(a)(2). Thus, Allen cannot proceed against Wellpath itself following its bankruptcy discharge.[4]

However, as the Honorable Robert D. Mariani recently explained when addressing a similar motion:

> In an Order dated January 25, 2026, the Bankruptcy Court clarified that, in accordance with the Trust Distribution Procedures ("TDPs") adopted when confirming Wellpath's Chapter 11 Plan and establishing the Liquidating Trust:
>
> > Holders of General Unsecured Claims arising from alleged pre-petition personal injury tort or wrongful death may proceed in the appropriate civil court and litigate such claim with the Trust included as a nominal defendant. As a nominal defendant, the Trust is not required to file answers, participate in discovery or hearings, or take an active role in any such litigation; provided, however, that nothing herein or in the Plan or TDPs shall prevent the Trust from participating in any such case at the direction of the Trustee or engaging in settlement discussions for purposes of determining stipulated Allowed Claim Amounts at the discretion of the Trustee.

[4] Because of this determination, the Court will not address Defendants' claim that Allen fails to allege a plausible Section 1983 claim against Wellpath.

> Revised and Amended Clarifying Order, In re Wellpath SF Holdco, No. 24-bk-90566 (Bankr. S.D. Tx. Jan. 25, 2026), Doc. 1279 at 2 (cleaned up).
>
> Accordingly, the Court will grant Wellpath's motion to dismiss based on the discharge of [the plaintiff's] pre-petition claims in bankruptcy, and Wellpath will be terminated as a party to this action. As noted in the Bankruptcy Court's January 25, 2026 Order, a holder of an unsecured claim that arises from alleged pre-petition personal injury tort or wrongful death may proceed with and litigate such claim with the Liquidating Trust established by the Bankruptcy Court by including it as a nominal defendant. Therefore, the dismissal will be without prejudice to [the plaintiff's] right to substitute the Trust as a nominal party in place of Wellpath and pursue his claims through the Liquidating Trust as instructed by the Plan.

See Payne v. Catell, No. 25-cv-01119, 2026 WL 1510454, at *4 (M.D. Pa. May 29, 2026). Therefore, if this action proceeds, Allen may still seek to litigate his claim with the Liquidating Trust by moving to substitute it as a nominal defendant in accordance with the Bankruptcy Court's procedures. See id.; see also Neyland v. Hutson, No. 23-cv-01773, 2026 WL 1661364, at *2 (E.D. La. June 9, 2026) (discussing limited exception to discharge against Wellpath and related entities).

**b. Claim Against Abel**

Defendants contend that Allen fails to plead a plausible deliberate indifference claim against Abel because Allen did not (1) sufficiently plead that he has a serious medical need, (2) allege that Abel had the requisite mental state of mind insofar as he acted in conscious disregard of a known risk or that he was willful or wanton, or (3) assert that there was a delay or complete deprivation of care. See (Doc. No. 31 at 12–14). As for whether Allen has sufficiently pleaded that he has a serious medical need, the Court disagrees with Defendants that he has not done so in his amended complaint. Allen alleges that a doctor prescribed his CPAP machine and distilled water because he needs the CPAP machine to breathe at night while sleeping. See (Doc. No. 14 ¶¶ 8, 15). While the Court recognizes that Allen has not identified his specific illness or medical condition requiring the use of the CPAP machine, he alleges that he has the CPAP machine

because a doctor prescribed it. Therefore, the Court finds that Allen has pleaded just enough at this early stage to show that he has a serious medical need under the Eighth Amendment.

Regarding Allen's allegations pertaining to Abel's state of mind, the Court agrees with Defendants that Allen has insufficiently pleaded that Abel was deliberately indifferent. Allen alleges that he had a doctor's prescription for distilled water and, yet, Abel denied him distilled water and told him to use tap water. Allen also alleges that Abel lied to him when Abel told him that the CDC allows individuals to use tap water with their CPAP machines. Even if Abel lied that the CDC approved the use of tap water for CPAP machines, Allen does not allege, nor is it reasonably inferable from his allegations, that Abel knew that having Allen use tap water for his CPAP machine posed an excessive risk to his health and safety and then consciously disregarded that risk by telling him to use tap water instead of distilled water. In other words, Allen fails to plausibly allege that Abel was aware of facts upon which an inference could be drawn that a substantial risk of harm existed if Allen used tap water with his CPAP machine. Thus, Allen fails to plead that Abel had the requisite state of mind to support his deliberate indifference claim. Accordingly, because the Court concludes that Allen fails to sufficiently allege deliberate indifference, the Court will dismiss Allen's Eighth Amendment claim against Abel.

#### c. Claim Against Marcinkowski

Defendants contend that Allen has not plausibly pleaded an Eighth Amendment violation against Marcinkowski because (1) she is an administrator and not a medical professional who provided care to Allen, (2) Allen fails to specify when Marcinkowski allegedly deprived him of care, and (3) Allen fails to identify how Marcinkowski was deliberately indifferent to his serious medical needs. See (Doc. No. 31 at 21–24). After reviewing Allen's sparse allegations against

Marcinkowski, the Court agrees with Defendants that Allen fails to plead a plausible claim against her.

For purposes of analyzing Allen's allegations against Marcinkowski, the Court presumes that she is a supervisory official based on Allen's descriptions of her responsibilities at SCI Dallas. See (Doc. No. 14 ¶¶ 6, 21). In attempting to show Marcinkowski's personal involvement, Allen does not plead that Marcinkowski established a policy, practice, or custom which directly caused him constitutional harm. As such, Allen must plead sufficient facts showing that Marcinkowski participated in violating his rights, directed others to violate them, or as a supervisor, knew about and acquiesced in his subordinate's violations. Allen fails to plead such facts here.

In the first instance, Allen does not plead facts showing that that Marcinkowski actually denied him access to distilled water or directed any subordinate (such as Abel) to do so. As for knowledge and acquiescence, Allen alleges that he "repeatedly wrote" Marcinkowksi about not receiving his prescribed distilled water, see (id. ¶¶ 25, 26), which could show that Marcinkowski knew about the alleged constitutional violation. However, Allen's allegations do not reach the level of demonstrating Marcinkowski's acquiescence.

"Allegations of knowledge and acquiescence must be made with appropriate particularity." Rode, 845 F.2d at 1207. "[A]n official receiving and reviewing a letter or request slip is insufficient to establish personal involvement (i.e., failure to respond or react does not establish that the official endorsed or acquiesced in the conduct at issue)." Ortiz v. Sopata, No. 23-cv-00214, 2024 WL 4680671, at *6 (M.D. Pa. Nov. 5, 2024) (citations omitted); see also Bullock v. Horn, No. 99-cv-01402, 2000 WL 1839171 at *5 (M.D. Pa. Oct. 31, 2000) ("Merely asserting that Plaintiff sent letters to these two defendants will not suffice. Indeed, it would be

anomalous to suggest that a prisoner could name as a Defendant any government official whatsoever, no matter how far removed in the chain of authority from the actual conduct in question, simply by sending that official a letter.”). Thus, by merely alleging that he repeatedly wrote (on unidentified dates) Marcinkowski about being denied distilled water for his CPAP machine, Allen has not sufficiently alleged Marcinkowski acquiesced in any alleged constitutional violation by Abel. Accordingly, the Court will grant Defendants’ motion seeking to have the Court dismiss Allen’s Eighth Amendment claim against Marcinkowski because he fails to plausibly plead her personal involvement in any constitutional violation.

### B. Screening of the Amended Complaint Under Sections 1915(e)(2)(B) and 1915A(a)

Along with considering Defendants’ amended motion to dismiss Allen’s amended complaint, the Court has also screened the amended complaint as to those parts not addressed by Defendants’ amended motion. Based on this screening, the Court will dismiss an additional claim in the amended complaint, namely, Allen’s apparent retaliation claim against Defendants.

At several points in the amended complaint, Allen alleges that he suffered from various forms of retaliation. For instance, Allen alleges that since the July 9, 2023 incident, Abel scheduled his chronic care appointment on holidays or whenever the doctor is not working. See (id. ¶ 11). This allegation is insufficiently pleaded to the extent that Allen seeks to assert a First Amendment retaliation claim because he does not identify that he engaged in any form of constitutionally protected activity prior to the alleged retaliatory act. See Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) (indicating that a plaintiff seeking to plead a prima facie First Amendment retaliation claim must allege that: “(1) [their] conduct was constitutionally protected; (2) [they] suffered an adverse action at the hands of prison officials; and (3) [their] constitutionally protected conduct was a substantial or motivating factor in the decision to

discipline [them]" (citations omitted)). On the other hand, this assertion might be sufficient to show that Abel was deliberately indifferent to Allen's serious medical needs insofar as Abel would be essentially denying Allen access to his regular chronic care appointments by scheduling those appointments for dates when the doctor is unavailable. However, because Allen's allegations regarding Abel's scheduling of his chronic care appointments is factually undeveloped, the Court will dismiss it to the extent that Allen attempts to include it as a deliberate indifference claim.

In addition to the above allegation, Allen alleges that he was "collectively" retaliated against through denials of recreational time, the removal of his name from the library list, lack of access to showers, and limitations on his access to commissary. See (Doc. No. 14 ¶ 14). Allen does not, however, allege that Abel or Marcinkowski retaliated against him or otherwise identify any individuals who retaliated against him.[5] Thus, insofar as Allen fails to plead a plausible retaliation claim against the named Defendants, the Court will dismiss the amended complaint to the extent that Allen attempts to assert a First Amendment retaliation claim against Defendants.

**C. Leave to Amend**

Having determined that Allen's claims against Defendants are subject to dismissal, the Court must determine whether to grant him leave to file an amended complaint. Courts should generally give leave to amend but may dismiss a complaint with prejudice where leave to amend would be inequitable or futile. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—

[5] It also is not apparent from the amended complaint why anyone retaliated against Allen. Allen alleges that "[o]ut of fear of retaliation," he wrote to unidentified staff members about Abel's conduct towards him. See (id. ¶ 13). However, it is unclear whether Allen alleges that those writings caused the alleged retaliation.

irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); see also Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable or futile."). "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

Here, the Court finds that it would not be futile to allow Allen to amend his deliberate indifference claim against Abel but that it would be futile to amend his deliberate indifference claim against Marcinkowski. As to Marcinkowski, there has been no indication in either Allen's original complaint or amended complaint that Marcinkowski was involved in any respect with his medical care other than his receipt of Allen's correspondence possibly complaining about Abel or his lack of access to distilled water for his CPAP. As for Abel, Allen is missing factual details to support his deliberate indifference claim that he might possess and be able to articulate. Thus, the Court will grant him leave to amend his claim against Abel even though he has now had two chances to plead a plausible deliberate indifference claim against Abel. Regarding Wellpath, the Court will not grant Allen leave to amend his operative complaint to assert a claim against Wellpath; however, the Court will dismiss his claim against with Wellpath without prejudice to Allen's right to substitute the Liquidating Trust as a nominal party in place of Wellpath and pursue his claims through the Liquidating Trust as instructed by the Amended Plan. Finally, to the extent that Allen seeks to assert a retaliation claim against any Defendant,

the Court will dismiss the claim without prejudice to Allen, if he desires and can do so, setting forth sufficient facts to assert such a claim in a second amended complaint.

## IV. CONCLUSION

For the reasons set forth above, the Court will deny as moot Defendants' original motion to dismiss, grant Defendants' amended motion to dismiss, dismiss Allen's Eighth Amendment claim against Marcinkowski with prejudice, dismiss Allen's Eighth Amendment claim against Abel without prejudice to Allen filing a second amended complaint to the extent he believes he can plead a plausible deliberate indifference claim against Abel, dismiss Allen's Eighth Amendment claim against Wellpath without prejudice to Allen's right to substitute the Liquidating Trust as a nominal part in place of Wellpath and pursue his claims through the Liquidating Trust as instructed by the Amended Plan, and dismiss Allen's First Amendment retaliation claims without prejudice to him repleading them in a second amended complaint. An appropriate Order follows.[6]

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

[6] The Order will provide additional information to Allen about the filing of a second amended complaint.